UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
--------------------------------------------------------X
DONTE DOMINQUE ROBINSON,

Plaintiff,

Civil Action No. ____________

-against-

**COMPLAINT & JURY TRIAL DEMAND**

LAW PLUS LLC D/B/A VOLKSWAGEN OF SPRINGFIELD
D/B/A SPRINGFIELD MITSUBISHI,
and BRIAN ANDERSEN, individually,
and SUZANNE OLDHAM, individually,
and MICHAEL RHOADES, individually,
and JOE DAVIS, individually,
and CHRIS PHILLIPS, individually,

Defendants.
--------------------------------------------------------X

## INTRODUCTION

Plaintiff DONTE DOMINQUE ROBINSON (hereinafter, "Plaintiff" and/or "Mr. Robinson"), by his undersigned counsel, THE COCHRAN FIRM, as and for his Complaint against Defendants LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD d/b/a SPRINGFIELD MITSUBISHI, BRIAN ANDERSEN, SUZANNE OLDHAM, MICHAEL RHOADES, JOE DAVIS and CHRIS PHILLIPS, alleges upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CLAIMS

**1.** This is a civil action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI, BRIAN ANDERSEN, SUZANNE OLDHAM, MICHAEL RHOADES, JOE DAVIS and CHRIS PHILLIPS' unlawful employment practices against Plaintiff DONTE DOMINQUE ROBINSON, including their discriminatory treatment, harassment, hostile

work environment, and unlawful retaliation against the Plaintiff due to sex, gender and race, in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (the "PHRA").

## PRELIMINARY STATEMENT

**2.** This is an action for sex, gender and race discrimination, sexual and racial harassment, hostile work environment, and retaliation, including the retaliatory termination of Plaintiff's employment on or about June 23, 2026, two (2) weeks after Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, brought by DONTE DOMINQUE ROBINSON against LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI, BRIAN ANDERSEN, SUZANNE OLDHAM, MICHAEL RHOADES, JOE DAVIS, and CHRIS PHILLIPS, arising from severe and pervasive sexual harassment of Plaintiff by two of LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI's managers, a racially hostile work environment that included a racial slur used by a manager in Plaintiff's hearing and a racial slur about a Black co-worker that Plaintiff was told the Corporate Defendant's Controller had made, Defendants' failure to investigate or remedy the harassment after Plaintiff reported and opposed it, and Defendants' escalating retaliation against Plaintiff after he complained and after he filed his charge, culminating in the termination of his employment.

**3.** Plaintiff worked for LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI as a Detailer from in or around August 2020 until his employment was terminated on or about June 23, 2026.

**4.** Defendants subjected DONTE DOMINQUE ROBINSON to retaliation and race-based harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2, et seq., and of the Reconstruction Era Civil Rights Acts, as amended, 42 U.S.C. §§ 1981, et seq. (hereinafter "RECRA").

**5.** Throughout his employment with Defendants, DONTE DOMINQUE ROBINSON was subjected to discrimination, harassment, retaliation, and a hostile work environment by Defendant LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI's employees and/or agents, including Mr. BRIAN ANDERSEN, Ms. SUZANNE OLDHAM, Mr. MICHAEL RHOADES, Mr. JOE DAVIS, and Mr. CHRIS PHILLIPS.

**6.** LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI's administrative system lacks integrity and fairness, and violates Federal laws, municipal employment laws, regulations, and policies.

**7.** LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI has also been disparate in their personnel actions regarding career development and benefits based on Plaintiff's gender, sex and race.

**8.** LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI's egregious and outrageous acts of discrimination and retaliation against Plaintiff during his employment have resulted in severe emotional distress, humiliation, anxiety, physical ailments, reputational harm, and economic damages.

**9.** Defendants' conduct is knowing, malicious, willful, and wanton and/or shows a reckless disregard for the Plaintiff. It has caused and continues to cause the Plaintiff to suffer substantial economic and non-economic damages, permanent harm to Plaintiff's professional and personal reputations, and severe mental anguish and emotional distress.

**JURISDICTION AND VENUE**

**10.** This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (the "PHRA"), pursuant to 28 U.S.C. § 1367, as those claims arise from the same common nucleus of operative fact.

**11.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, specifically at Defendant LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI's dealerships located in Springfield, Delaware County, Pennsylvania, within the Eastern District of Pennsylvania.

**12.** On or about June 9, 2026, Plaintiff Mr. Robinson, through counsel, filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against the Corporate Defendant, docketed as EEOC Charge No. 530-2026-07198 (the "Charge").

**13.** On June 30, 2026, the EEOC issued a Determination and Notice of Rights for EEOC Charge No. 530-2026-07198 (hereinafter "Plaintiff's said Notice of Right to Sue letter"), which Plaintiff received on or about June 30, 2026.

**14.** Plaintiff satisfies all administrative and jurisdictional prerequisites and has filed this Complaint within ninety (90) days of receiving the Notice of Right to Sue letter.

**15.** Plaintiff has filed suit with this Court within all applicable statute of limitations periods.

**16.** All conditions and requirements precedent to the commencement of this action have been met.

**17.** The termination of Mr. Robinson's employment on June 23, 2026, alleged below, occurred after the Charge was filed and while it was pending before the EEOC. It grew out of, is reasonably

related to, and is fairly within the scope of the Charge, which alleged retaliation, and of the EEOC investigation that could reasonably be expected to grow out of it.

## PARTIES

***The Plaintiff***

**18.** Plaintiff DONTE DOMINQUE ROBINSON is a black, African-American, heterosexual man and, at all times material hereto, a resident of Philadelphia, Pennsylvania. On or about July 27, 2025, Plaintiff suffered an open displaced fracture of the left talus and calcaneus, which required surgery on August 7, 2025, and a medical absence from work until April 1, 2026.

**19.** Plaintiff is therefore a member of multiple protected classes and is entitled to the protections provided by Title VII, Section 1981, and the PHRA.

***The Defendants and their Agents***

**20.** Defendant LAW PLUS LLC d/b/a VOLKSWAGEN OF SPRINGFIELD, d/b/a SPRINGFIELD MITSUBISHI (hereinafter "LAW PLUS" and/or the "Corporate Defendant") is a limited liability company organized and authorized to do business in the Commonwealth of Pennsylvania, operating the Volkswagen of Springfield and Springfield Mitsubishi automobile dealerships located at 300 Baltimore Pike, Springfield, Delaware County, Pennsylvania 19064.

**21.** Upon information and belief, the Corporate Defendant employs more than fifty (50) employees and at all times material hereto was Plaintiff's "employer," "joint employer," and/or "single employer" within the meaning of all applicable statutes.

***The Individual Discriminators***

**22.** At all times material to this Complaint, Defendant BRIAN ANDERSEN (hereinafter referred to as "ANDERSEN") is, and at all times material hereto was, the General Manager of both the

Volkswagen of Springfield and Springfield Mitsubishi dealerships, a supervisor, and a decision-maker with regard to Plaintiff's employment. ANDERSEN is a white, Caucasian man.

**23.** ANDERSEN was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, ANDERSEN also aided and abetted the unlawful conduct described herein.

**24.** ANDERSEN actively sought, and continues to seek, to exploit his position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**25.** Defendant SUZANNE OLDHAM (hereinafter "OLDHAM") is, and at all times material hereto was, the Finance Manager for the Springfield Mitsubishi dealership, a supervisor, and a decision-maker with regard to Plaintiff's employment. OLDHAM is a white, Caucasian woman.

**26.** OLDHAM was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, OLDHAM also aided and abetted the unlawful conduct described herein.

**27.** OLDHAM actively sought, and continues to seek, to exploit her position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**28.** Defendant MICHAEL RHOADES (hereinafter "RHOADES") is, and at all times material hereto was, the Service Manager for the Volkswagen of Springfield dealership, a supervisor, and a decision-maker with regard to Plaintiff's employment. RHOADES is a white, Caucasian man.

**29.** RHOADES was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, RHOADES also aided and abetted the unlawful conduct described herein.

**30.** RHOADES actively sought, and continues to seek, to exploit his position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**31.** Defendant JOE DAVIS (hereinafter "DAVIS") is, and at all times material hereto was, the Floor Manager and Used Car Manager for the Springfield Mitsubishi dealership, a supervisor, and a decision-maker with regard to Plaintiff's employment. DAVIS is a white, Caucasian man.

**32.** DAVIS was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, DAVIS also aided and abetted the unlawful conduct described herein.

**33.** DAVIS actively sought, and continues to seek, to exploit his position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**34.** Defendant CHRIS PHILLIPS (hereinafter "PHILLIPS") is, and at all times material hereto was, the General Manager for the Volkswagen of Springfield dealership, a supervisor, and a decision-maker with regard to Plaintiff's employment.

**35.** PHILLIPS was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff. As Plaintiff's supervisor, PHILLIPS also aided and abetted the unlawful conduct described herein.

**36.** PHILLIPS actively sought, and continues to seek, to exploit his position of authority to discriminate against, retaliate against, humiliate, intimidate, and professionally sabotage Plaintiff, and other LAW PLUS employees who are members of protected classes.

**37.** ANDERSEN, OLDHAM, RHOADES, DAVIS, and PHILLIPS are collectively referred to as the "Individual Defendants."

**38.** At all times material to this Complaint, each Individual Defendant was aware of Plaintiff's protected characteristics, including, inter alia, Plaintiff's sex and race.

**39.** At all times material to this Complaint, each Individual Defendant was aware of Plaintiff's protected conduct, including, *inter alia*, his complaints of harassment and his legally protected medical absence from work, and each acted within the scope and course of his or her employment and agency with the Corporate Defendant.

**40.** At all times material to this Complaint, each Individual Defendant was aware of and subject to LAW PLUS' Non-Discrimination, Non-Retaliation, and Anti-Harassment policies, including, specifically, the said policy's provisions on managerial and supervisory responsibility and protected complaint procedures.

## FACTUAL ALLEGATIONS

### Plaintiff's employment

**41.** Mr. Robinson was employed by the Corporate Defendant, doing business as Volkswagen of Springfield and Springfield Mitsubishi, from in or around August 2020 until the Corporate Defendant terminated his employment by letter dated June 23, 2026.

**42.** Plaintiff initially worked as a W-2 employee from in or around August 2020 through 2021, then as a 1099 independent contractor from 2022 through 2025 and returned to W-2 employee status on or about April 1, 2026, earning $20.00 per hour as a Detailer.

**43.** At all times material hereto, Plaintiff was qualified for his position.

**44.** Throughout his employment, Mr. Robinson received compliments for his work performance and always got along well with his co-workers.

**45.** Despite his excellent work record, throughout his employment Plaintiff was subjected to a pattern and practice of discrimination, harassment, and a hostile work environment based upon his sex, gender and race, and his protected absence from work due to valid and protected medical leave.

**Sexual harassment by ANDERSEN and OLDHAM**

**46.** Throughout his employment, Mr. Robinson was subjected to severe and pervasive sexual harassment by ANDERSEN, who serves as General Manager for both the Mitsubishi and Volkswagen dealerships, and by OLDHAM, who serves as Finance Manager for the Mitsubishi dealership.

**47.** By way of example, on or about March 8, 2025, while Plaintiff was in the Volkswagen sales area, ANDERSEN instructed Plaintiff to "PULL IT OUT AND LET EVERYBODY SEE IT," referring to Plaintiff's genitals.

**48.** This incident occurred after Ms. Rabiah [Last Name Unknown], then the Finance Manager, made comments about Plaintiff's foot size and implied that it related to the size of Plaintiff's genitals, and ANDERSEN escalated the situation by demanding that Plaintiff expose himself to the staff who were present at the time.

**49.** This incident occurred in front of multiple witnesses, including Mr. Robert Williams, a salesman with approximately twelve (12) years of service, and other sales staff.

**50.** Mr. Robinson immediately engaged in protected activity by reporting the incident to RHOADES and to Ms. Catherine Smith ("Ms. Smith"), the Assistant Service Manager and/or Warranty Administrator, both of whom possessed supervisory authority over employees.

**51.** RHOADES acknowledged the seriousness of the incident and advised Plaintiff, "IF YOU CREATE A CASE OUT OF THIS, I WILL SUPPORT YOU 100%."

**52.** Despite Plaintiff's complaint to management, no investigation was conducted and no disciplinary action was taken against ANDERSEN. The following day, it was as if nothing had occurred.

**53.** In or around November 2025, while Plaintiff was visiting the dealership during his recovery from the injury he sustained on or about July 27, 2025, ANDERSEN made another sexually

inappropriate comment in front of witnesses, stating, “I’M GLAD IT WASN’T YOUR THIRD LEG THAT GOT SHOT OFF,” again referring to Plaintiff’s genitals.

**54.** This incident occurred in front of multiple witnesses, including OLDHAM, Kayla Droxler (“Ms. Droxler”), a Service Advisor for the Volkswagen dealership, a salesman known to Plaintiff as John, and Plaintiff’s father.

**55.** In or around late March 2026, approximately two weeks before Plaintiff’s return to work on April 1, 2026, Plaintiff met with ANDERSEN, OLDHAM, and DAVIS, to discuss Plaintiff’s return to employment.

**56.** During this meeting, when Plaintiff mentioned attending the gym and working on physical fitness during his recovery, ANDERSEN demanded, “TAKE YOUR SHIRT OFF, LET ME SEE YOUR SIX-PACK.”

**57.** DAVIS, who was present, put his head down in acknowledgment that the comment was inappropriate but took no corrective action, in dereliction of his supervisory duties.

**58.** Additionally, beginning in or around late 2023 and continuing until the end of Plaintiff’s employment, ANDERSEN made daily sexualized comments about Plaintiff and directly to Plaintiff.

**59.** By way of example, in or around August 2024, ANDERSEN said, in reference to Ms. Droxler, a Service Advisor for the Volkswagen dealership, a 24-year-old Black, African-American woman, “I ONLY HIRED HER BECAUSE SHE WORKED AT HOOTERS.”

**60.** This comment was made in front of multiple witnesses, including Plaintiff.

**61.** By way of further example, ANDERSEN repeatedly used the phrase “Eiffel Tower” in comments to Mr. Robinson.

**62.** ANDERSEN made the sexual nature of his “Eiffel Tower” comments clear in or around early 2025 when ANDERSEN showed Plaintiff the Urban Dictionary definition of “Eiffel Tower” on his computer in the sales area, confirming that it refers to a sexual act involving two men and one woman engaging in simultaneous vaginal and oral sex with the men “high-fiving” each other over the woman’s body, creating an Eiffel Tower shape with their bodies.

**63.** By way of further example, ANDERSEN made daily comments when Mr. Robinson removed his work gloves to use the key machine in ANDERSEN’s office, stating that Plaintiff was “TAKING OFF THE GLOVE AND GOING RAW,” referring to removing a condom and engaging in unprotected sex.

**64.** On or about November 29, 2024, at approximately 12:08 a.m., ANDERSEN sent Plaintiff a sexually explicit text message containing an image of a “P. Diddy” balloon holding a baby-oil bottle, referencing widely publicized allegations of sexual misconduct involving Sean ‘P. Diddy’ Combs.

**65.** On or about June 17, 2025, at approximately 7:05 p.m., ANDERSEN sent Mr. Robinson a sexually explicit message from his personal Facebook account containing a link to a public video that referenced “Rhino Pills” (male sexual enhancement aids), “MDMA” (ecstasy pills), “honey packs” (male sexual enhancement supplements) and “dildos.”

**66.** Plaintiff deleted other sexually explicit messages from ANDERSEN because they were so disturbing that Plaintiff did not want to see them, including a message depicting two gingerbread cookies in bed with sexual imagery.

**67.** OLDHAM routinely reinforced ANDERSEN’s comments, or made sexualized, harassing comments of her own when ANDERSEN was absent, including comments objectifying Plaintiff’s physique, such as “YOU’RE GETTING SKINNY!” and “YOU’RE GAINING WEIGHT!”, and

her own comments about the "Eiffel Tower," both on her own and in ANDERSEN's presence. In or around 2022, OLDHAM told Plaintiff that ANDERSEN "had a crush" on him.

**68.** These sexual comments, advances, and messages were unwelcome, and Plaintiff never encouraged or reciprocated ANDERSEN's or OLDHAM's behavior.

**69.** The sexual harassment was severe and pervasive, occurring on a near-daily basis over a period of approximately two and a half years, and created a hostile and abusive work environment.

**70.** ANDERSEN's and OLDHAM's conduct was discriminatory: similarly situated non-Black and female employees were not sexually objectified or subjected to unwanted, unsolicited sexual comments and content in this manner.

**<u>Racial hostility at LAW PLUS</u>**

**71.** In addition to the sexual harassment, Mr. Robinson was subjected to a racially hostile work environment.

**72.** DAVIS used the racial slur "JIGABOO" when referring to Black and African-American employees, including Ms. Brianna Jones, a Black, African-American female manager who hired Plaintiff.

**73.** In or around 2022 to 2023, Mr. Robinson personally heard DAVIS state, "I AIN'T GOT TIME FOR THESE JIGABOOS TO KEEP PLAYING WITH THIS," referring to Brianna Jones and other Black and African-American employees.

**74.** The use of racial slurs by management created a hostile work environment for Plaintiff and other Black employees.

**<u>The Controller's "monkey" remark about Mr. Williams-Hayes, and Plaintiff's report of it</u>**

**75.** In or around April 2026, after Plaintiff had returned to work, Tim Martin ("Mr. Martin"), a former Lot and Detail Manager of the Corporate Defendant and a friend of Plaintiff, visited the dealership while Plaintiff was working in the detail shop.

**76.** Mr. Martin went into the Human Resources building to greet the staff there. When he returned to the detail shop, he told Plaintiff that a manager known to Plaintiff as Marisa, upon information and belief Marisa Corrado ("Ms. Corrado"), the Corporate Defendant's Controller, whose office is in the Human Resources building, had just referred to Plaintiff's co-worker Rondell Williams-Hayes, a Black Lot Attendant at the Volkswagen of Springfield dealership, by saying: "I SEE CHRIS GOT THAT MONKEY WORKING FOR HIM."

**77.** Plaintiff understood Ms. Corrado to be the Controller for all of the dealerships owned by Matthew Law, with authority over employees' pay, scheduling and discipline, terminations, exercising authority above the general managers and the chief operating officer.

**78.** The next morning, before telling Mr. Williams-Hayes, Plaintiff called PHILLIPS down to the detail shop and reported the remark to him in person.

**79.** When Plaintiff next went to see RHOADES and Ms. Smith in their office, they already knew of the remark. Mr. Robinson did not report it to them himself and assumed that PHILLIPS had told them.

**80.** Plaintiff then told Mr. Williams-Hayes. Mr. Williams-Hayes reported the remark to PHILLIPS, who told him that the Corporate Defendant was investigating, and who later proposed that Mr. Williams-Hayes "have a conversation" with Ms. Corrado.

**81.** No one from the Corporate Defendant interviewed Mr. Robinson about his report, and no one told him of any outcome. The only steps Plaintiff saw were efforts to get Mr. Williams-Hayes to go to the Human Resources building for a conversation or to sign papers. Plaintiff is not aware of any discipline of Ms. Corrado.

**82.** A racial slur about a Black co-worker by the senior manager responsible for the Corporate Defendant's payroll, and the Corporate Defendant's failure to take Plaintiff's report of it seriously, contributed to the racially hostile work environment in which Plaintiff worked. Plaintiff contends that his report of the remark to PHILLIPS was protected opposition to race discrimination.

**<u>Unequal treatment of Black Detailers</u>**

**83.** In or around May 2026, Mr. Robinson and the other Black Detailers, Randal Asbury ("Mr. Asbury") and Mr. Williams-Hayes, were assigned the heavier and less desirable work, while a white employee, William "Bull" Connolley, who performed maintenance work, was permitted to direct and obstruct their work and was treated more favorably by management.

**<u>Plaintiff's complaints and the Corporate Defendant's failure to act</u>**

**84.** On or about April 5, 2026, four days after returning to work, Plaintiff engaged in protected activity by complaining to PHILLIPS about all of the sexual harassment he had experienced, including being told to expose his penis, being told to remove his shirt, and the ongoing sexual comments and text messages.

**85.** PHILLIPS acknowledged the seriousness of the complaint by putting his head down and stating, "OH MY GOD," but took no corrective action.

**86.** Plaintiff did not file a formal complaint directly with Human Resources after learning that Human Resources had previously failed to address a similar complaint made by Ms. Smith, concerning discriminatory comments made by a Human Resources employee about her Black husband.

**87.** Plaintiff feared that reporting to Human Resources would result in job loss and retaliation, particularly given the Corporate Defendant's policy and history of failing to address discrimination complaints.

**<u>The timekeeping lockout after Plaintiff's complaint</u>**

**88.** Upon his return to work on or about April 1, 2026, Plaintiff was required, as an hourly employee, to clock in and out through the Corporate Defendant's ADP timekeeping system, which requires an emailed registration invitation from the employer to activate the employee's account.

**89.** Plaintiff did not receive an ADP registration invitation.

**90.** On April 16, 2026, at 2:42 p.m., Plaintiff emailed the Corporate Defendant's Human Resources department at the address PHILLIPS had given him, hr@phillydrive.com, with the subject "ADP invite": "Good afternoon, hope all is well when you get a minute could you send me that invite for ADP."

**91.** In the meantime, PHILLIPS, who had told Plaintiff, "I got you with the hours," punched Plaintiff in and out manually. For the pay period April 5 through April 18, 2026, Plaintiff was paid for 75.50 hours at $20.00 per hour.

**92.** Beginning in or around April 2026 and continuing through June 2026, Plaintiff repeatedly requested the ADP invitation from the Corporate Defendant's Human Resources department, directly and through PHILLIPS and Ms. Smith, who for weeks tried to help him, including by emailing Human Resources from her own account, and did not receive one.

**93.** By May 25, 2026, Plaintiff had noticed that the hours being recorded for him did not match the hours he was working.

**94.** On or about May 27, 2026, PHILLIPS told Plaintiff by text message: "I need you to log into ADP and follow the prompts so that you can create a clock in and clock out account. As managers were not allowed to punch you guys in and out anymore I need you to be doing it on your own. Michelle said she sent you an email to your personal email last week. You can use one of the computers in the showroom to set it up before you leave."

**95.** Plaintiff checked his email, including his spam and junk folders, and had not received any invitation.

**96.** On the same day, May 27, 2026, Plaintiff broke down in tears at work from the stress of the harassment and the loss of his hours, and began seeking counseling.

**97.** On Wednesday, June 3, 2026, at 9:02 a.m., PHILLIPS texted Plaintiff: “Please go see cat and ask her to use a computer in service to log into your email and email Hr@vwphilly.com From your personal email so they can send you the log in to ADP.”

**98.** That morning Mr. Robinson punched a paper timecard in his own name at 8:02 a.m., photographed it, and asked PHILLIPS, “Can we do this for now?” PHILLIPS replied, “Yes but did you send the email?” and then: “Let’s do that detail before the 4 cars. That time card needs to live behind my desk until we get the email sorted out.”

**99.** At 12:08 p.m. on June 3, 2026, sitting with PHILLIPS, Plaintiff emailed the Corporate Defendant’s Human Resources department at hr@phillydrive.com, copying PHILLIPS at chrisp@vwphilly.com, with the subject “ADP log in request,” and at 12:10 p.m. sent PHILLIPS a test message to confirm that his email account was working.

**100.** PHILLIPS was copied on the request and did not tell Plaintiff that it had gone to the wrong address; hr@phillydrive.com was the address PHILLIPS himself had given Plaintiff for Human Resources and the address Plaintiff had used on April 16.

**101.** PHILLIPS asked Plaintiff more than ten times that day to check his email.

**102.** When Plaintiff offered to walk over to the Human Resources building, PHILLIPS told him no, “we can figure this out right here,” in the presence of Joshua De Mets, the Finance Director, and Christopher Maranan, the Sales Manager.

**103.** Upon information and belief, Human Resources never responded to the June 3 request and Plaintiff never received an invitation.

**104.** On June 5, 2026, when Mr. Robinson asked PHILLIPS whether he had received a reply to the email they had drafted together, PHILLIPS answered: "They would not include me on the email coming from ADP."

**105.** On Thursday, June 4, 2026, at 7:52 a.m., Plaintiff told PHILLIPS by text that he could not come in that day, and PHILLIPS replied "Understood."

**106.** At 6:01 p.m. that evening PHILLIPS texted: "Heads up. You need to be able to sort out the ADP issue before you come to work tomorrow. I'm no longer permitted to punch you in and out."

**107.** Plaintiff understood PHILLIPS' June 4 instruction to mean that he could not return to work until the ADP problem, which only the Corporate Defendant could fix, was resolved. June 3, 2026 was the last day Plaintiff worked.

**108.** On Friday, June 5, 2026, PHILLIPS asked, "Were you able to log in?" When Plaintiff asked what PHILLIPS meant by telling him he could not come in until he figured out ADP, PHILLIPS answered: "I don't have an explanation for this. Everyone else in the company has been able to accomplish this task. If you cannot get into the system you can call Michele at 484-574-8434. And my statement means that in order for you to get paid you need to be able to punch in/out on ADP."

**109.** Upon information and belief, the directive that PHILLIPS was "no longer permitted" to punch Plaintiff in and out came from the Corporate Defendant's management. Its effect was to prevent Plaintiff from working and from being paid, and, upon information and belief, that was its purpose.

**110.** On June 5, 2026, at 10:10 a.m., Plaintiff sent a text message to the Human Resources telephone number he had been given, addressed to "Michelle," identifying himself and asking that the ADP invitation be sent to his email, explaining that he and PHILLIPS had "been trying to figure this out

over seven weeks" and that PHILLIPS "was saying I was not able to work if I didn't figure this out." He also tried to call the number, without an answer.

**111.** On Saturday, June 6, 2026, Plaintiff texted PHILLIPS that he understood that the company would not pay him until the ADP issue was resolved, and made it clear that he was not in any way abandoning his position.

**112.** PHILLIPS replied, "Understood. Did you get everything situated? Did you try calling Michele?"

**113.** When Plaintiff said he had been trying to call and text Michele without an answer, PHILLIPS wrote: "You can't text that number it's the office number and you're going to ask for Michele's extension which is 116. Also, the office doesn't work Saturdays. Is this the first time that you've attempted to reach out to them?"

**114.** Plaintiff answered that he had reached out on Friday and that "she doesn't answer to any emails, we all send emails everyday."

**115.** Upon information and belief, the Corporate Defendant did not enforce the ADP requirement uniformly. Mr. Asbury, a Detail and lot employee with approximately eight (8) years of service, had never clocked in through ADP and was instead routinely clocked in and out by managers, including Defendant OLDHAM, for years, without adverse consequence.

**116.** Plaintiff's hours and pay collapsed as a result of the timekeeping lockout. Plaintiff's paycheck dated June 5, 2026, reflected fifty-two (52) hours (47 regular and 5 holiday) and gross pay of $1,040.00. His paycheck dated June 18, 2026, covering the pay period of May 31 through June 13, 2026, reflected only 12.33 hours and gross pay of $246.60, a net check of $220.00.

**117.** The 12.33 hours for which Plaintiff was paid for that period were the hours PHILLIPS recorded for him.

**118.** In fact, on each of the days Mr. Robinson worked in that pay period, June 1, 2 and 3, 2026, as PHILLIPS' own text messages assigning him work on those days reflect, Plaintiff arrived at approximately 8:00 a.m., before the managers, and left at approximately 5:00 p.m., working an estimated eight to ten hours a day, substantially more in total than the 12.33 hours for which he was paid.

**119.** Plaintiff relied on PHILLIPS to record his time and kept no separate record.

**<u>The Charge and the retaliatory termination</u>**

**120.** On or about June 9, 2026, Plaintiff, through counsel, filed the Charge with the EEOC's Philadelphia District Office, alleging sexual harassment, race discrimination and retaliation and naming ANDERSEN, OLDHAM, and RHOADES.

**121.** Upon information and belief, the Corporate Defendant received notice of the Charge from the EEOC before June 23, 2026.

**122.** On or about June 10, 2026, the day after the Charge was filed, Mr. Robinson documented that he and Mr. Williams-Hayes, the other Black Detailer on the Volkswagen side, had been required to work with malfunctioning equipment, including a pressure washer that repeatedly lost pressure and a vacuum that was not hooked up, while two white Detailers on the Springfield Mitsubishi side, Mike and Tim [Last Names Unknown], had a working pressure washer and a wall-mounted vacuum.

**123.** Plaintiff had repeatedly told PHILLIPS that the pressure washer did not work; PHILLIPS disregarded the complaints and, when work slowed, pressed Plaintiff about his production.

**124.** Two (2) weeks after the Charge was filed, the Corporate Defendant terminated Plaintiff's employment.

**125.** On or about June 23, 2026, the Corporate Defendant, by letter on Volkswagen of Springfield letterhead signed by Michele D. Carroll, its Human Resources Manager, terminated Plaintiff's employment, purportedly "for failure to show up for your shifts."

**126.** The termination letter asserted that "Chris Phillips, GM, has sent you several emails advising you that you were required to log in to ADP and clock in and out, as all hourly employees are required to do," and that "[i]f you were having problems, you should have contacted the HR Department for any assistance, which you did not."

**127.** The stated attendance reason for the termination, and its assertion that Plaintiff never contacted Human Resources, were false and pretextual.

**128.** Plaintiff had contacted the Human Resources department in writing about ADP access on April 16, 2026 and again on June 3, 2026, the second time in an email prepared and sent together with, and copied to, the Corporate Defendant's own General Manager; had texted, and attempted to telephone, the Human Resources number on June 5 and 6, 2026; had been told by PHILLIPS on June 3 not to walk over to the Human Resources building; and had never received an ADP invitation.

PHILLIPS' communications to Plaintiff about ADP were text messages, and it was PHILLIPS who directed Plaintiff to email Human Resources.

**129.** It was PHILLIPS, the Corporate Defendant's General Manager, who told Plaintiff that he was "no longer permitted" to punch Plaintiff in and out, that Plaintiff could not come to work until ADP was resolved, and that the paper timecard Plaintiff used to record his hours would stay behind PHILLIPS' desk. The letter's separate "drug dealings" assertion is addressed below.

**130.** The termination letter did not identify any shift that Mr. Robinson failed to work, and the Corporate Defendant had never warned or disciplined Plaintiff for attendance.

**131.** The termination letter further made outrageous and defamatory assertions that "there have been alleged drug dealings that you were involved in."

**132.** The letter does not say who made the accusation, when, or what it consisted of.

**133.** The close temporal proximity between Plaintiff's protected activity and the adverse actions described herein supports a strong inference of retaliatory causation: the timekeeping lockout and the reduction of Plaintiff's paid hours to 12.33 in a two-week pay period followed his April 5, 2026 complaint to PHILLIPS, the manager who then carried out the lockout, and the termination of his employment on or about June 23, 2026 followed the June 9, 2026 filing of the Charge by fourteen days.

**<u>The Corporate Defendant's policies and pattern of conduct</u>**

**134.** The Corporate Defendant's employee handbook explicitly prohibits sexual harassment, racial discrimination, and retaliation, and requires prompt investigation and corrective action.

**135.** Despite these written policies, Defendants did not investigate Plaintiff's complaints, did not interview him, and, upon information and belief, took no disciplinary action against the harassers.

**136.** The Corporate Defendant failed to prevent and remediate both the sexual harassment and the racial discrimination despite having knowledge of these issues through Plaintiff's complaints and complaints by other employees.

**137.** Upon information and belief, the Corporate Defendant has engaged, and continues to engage, in a pattern and practice of disparate treatment, providing preferential treatment, opportunities, and benefits to employees outside Plaintiff's protected classes, while denying equal treatment, opportunities, and benefits to Plaintiff and other similarly situated Black, African-American, and male employees.

**138.** The totality of Defendants' actions demonstrates a pattern and practice of failing to prevent, investigate, or remedy discrimination, harassment, and retaliation, including the failure to

effectively implement and enforce anti-discrimination, anti-harassment, and anti-retaliation policies and to adequately train management and staff regarding employees' civil rights.

**139.** As a result of Defendants' unlawful conduct, Plaintiff has endured, and continues to endure, severe emotional distress, anxiety, depression, humiliation, fear, physical ailments, reputational harm, and economic damages. The harassment interfered with Plaintiff's ability to perform his job duties.

**140.** Plaintiff continued to work for the Corporate Defendant due to financial necessity, notwithstanding the intolerable work environment created by the ongoing harassment and Defendants' failure to act, until the Corporate Defendant locked him out of its timekeeping system and then terminated his employment on or about June 23, 2026, as set forth above.

**141.** Plaintiff claims a continuing practice of discrimination and makes all claims herein under the continuing violations doctrine.

**142.** In the alternative, in the event Defendants contend or the Court determines that Plaintiff was an independent contractor during any relevant period, Plaintiff makes all applicable claims for the conduct and facts alleged herein under the law applicable to independent contractors, including 42 U.S.C. § 1981.

## AS AND FOR A FIRST CAUSE OF ACTION
## For Discrimination in Violation of
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)
## (Against the Corporate Defendant)

**143.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**144.** The Corporate Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment, including by terminating his employment on or about June 23, 2026, on the basis of his sex, gender and race, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

**145.** As a direct and proximate result of the Corporate Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages, including emotional distress, humiliation, reputational harm, lost compensation and benefits, and other pecuniary and non-pecuniary losses.

**AS AND FOR A SECOND CAUSE OF ACTION**
**For Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)**
**(Against the Corporate Defendant)**

**146.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**147.** The Corporate Defendant subjected Plaintiff to a hostile work environment based on his sex, gender and race, through severe and pervasive sexual and racial harassment by its supervisors, managers and its Controller, sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment, in violation of Title VII. The Corporate Defendant knew of the harassment through Plaintiff's complaints to management and failed to take prompt and effective remedial action.

**AS AND FOR A THIRD CAUSE OF ACTION**
**For Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)**
**(Against the Corporate Defendant)**

**148.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**149.** Plaintiff engaged in protected activity by reporting and opposing the sexual and racial harassment described herein, including his March 2025 report to RHOADES and Ms. Smith, his April 5, 2026 complaint to PHILLIPS, and his June 9, 2026 filing of the Charge with the EEOC.

**150.** The Corporate Defendant retaliated against Plaintiff by failing to investigate or remedy the harassment, permitting its continuation and escalation, denying Plaintiff access to its ADP

timekeeping system, prohibiting his manager from punching him in and out, telling him he could not work until ADP was resolved, reducing his paid hours, and terminating his employment on or about June 23, 2026, two (2) weeks after the Charge was filed, in violation of 42 U.S.C. § 2000e-3(a).

**151.** The Corporate Defendant's stated reasons for the termination were false and pretextual, and Plaintiff's protected activity was the but-for cause of the adverse actions.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**For Discrimination and Harassment in Violation of**
**42 U.S.C. § 1981**
**(Against the Corporate Defendant and DAVIS)**

**152.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

**153.** The Corporate Defendant intentionally discriminated against Plaintiff, a Black, African-American man, on the basis of his race in the making, performance, enjoyment, and termination of his employment relationship, and subjected him to a racially hostile work environment, in violation of 42 U.S.C. § 1981. Section 1981 protects Plaintiff in all periods of his working relationship with the Corporate Defendant, whether as an employee or as an independent contractor.

**154.** Defendant DAVIS is personally liable under 42 U.S.C. § 1981 based on his direct, personal participation in the racial harassment alleged herein, including his use of the racial slur "jigaboo" about Black employees in Plaintiff's hearing.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**For Retaliation in Violation of**
**42 U.S.C. § 1981**
**(Against the Corporate Defendant)**

**155.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

**156.** Plaintiff engaged in activity protected by Section 1981 by opposing race discrimination, including by filing the Charge, which alleged race discrimination.

**157.** The Corporate Defendant retaliated against Plaintiff for that protected activity by terminating his employment on or about June 23, 2026, fourteen days after the Charge was filed, in violation of 42 U.S.C. § 1981.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**For Discrimination in Violation of**
**the Pennsylvania Human Relations Act, 43 P.S. § 955(a)**
**(Against the Corporate Defendant)**

**158.** Plaintiff repeats and realleges the allegations contained in each of the foregoing Paragraphs as if fully set forth herein.

**159.** At all times material hereto, Plaintiff was a member of a protected class on the basis of his sex as a man and his race as a Black, African American man.

**160.** Defendant LAW PLUS subjected Plaintiff to discrimination in the terms, conditions, and privileges of his employment on the basis of his sex and race, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

**161.** Defendant engaged in a pattern and practice of disparate treatment, providing preferential treatment, opportunities, and benefits to employees outside Plaintiff's protected class, while denying equal treatment, opportunities, and benefits to Plaintiff and other similarly situated Black and African American employees.

**162.** As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, anxiety, physical ailments, and other compensable harm.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**For Hostile Work Environment in Violation of**
**the Pennsylvania Human Relations Act, 43 P.S. § 955(a)**
**(Against the Corporate Defendant)**

**163.** Plaintiff repeats and realleges the allegations contained in each of the foregoing Paragraphs as if fully set forth herein.

**164.** Defendants subjected Plaintiff to a hostile, offensive, and abusive work environment based on Plaintiff's sex as a man and his race as a Black, African American man.

**165.** The hostile work environment included, without limitation: multiple LAW PLUS supervisory and managerial employees referring to Plaintiff's body in a sexually objectifying manner, a racial slur used by a manager in Plaintiff's hearing, a racial slur about a Black co-worker that Plaintiff was told the Corporate Defendant's Controller had made and that Plaintiff reported, and Defendants' failure to investigate or remediate the harassment after Plaintiff reported it.

**166.** The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment.

**167.** Defendant LAW PLUS knew or should have known of the hostile work environment and failed to take prompt and effective remedial action, in violation of 43 P.S. § 955(a).

**168.** As a direct and proximate result of the hostile work environment, Plaintiff has suffered severe emotional distress, anxiety, humiliation, fear, interference with his ability to perform his job duties, and other compensable harm.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**For Retaliation in Violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(d)**
**(Against the Corporate Defendant)**

**169.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**170.** The Corporate Defendant retaliated against Plaintiff because he opposed practices forbidden by the Pennsylvania Human Relations Act and because he filed the Charge, including by locking him out of its timekeeping system, reducing his hours and terminating his employment, in violation of 43 P.S. § 955(d).

**171.** Defendants' pre-termination retaliatory conduct would dissuade a reasonable employee from making or supporting a charge of discrimination.

**172.** As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer damages as set forth herein.

**AS AND FOR A NINTH CAUSE OF ACTION**
**For Aiding and Abetting in Violation of**
**the Pennsylvania Human Relations Act, 43 P.S. § 955(e)**
**(Against the Individual Defendants)**

**173.** Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

**174.** Defendants ANDERSEN, OLDHAM, RHOADES, DAVIS and PHILLIPS, as employees and agents of the Corporate Defendant LAW PLUS with supervisory authority over Plaintiff, aided, abetted, incited, compelled, and coerced the discriminatory, harassing, and retaliatory conduct alleged herein, in violation of 43 P.S. § 955(e).

**PRAYER FOR RELIEF**

WHEREFORE, THE ABOVE BEING CONSIDERED, Plaintiff DONTE DOMINQUE ROBINSON respectfully requests that this Court enter judgment against Defendants, jointly and severally (with relief under Title VII sought against the Corporate Defendant only), and award Plaintiff the following relief:

a) A declaratory judgment that Defendants' conduct violated the Pennsylvania Human Relations Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981;

b) An injunction directing Defendants to cease and desist from all discriminatory, harassing, and retaliatory practices against Plaintiff and other similarly situated employees;

c) Compensatory damages for Plaintiff's lost wages, lost benefits, and lost employment opportunities in an amount to be determined at trial, including back pay and front pay in lieu of reinstatement;

d) Compensatory damages for Plaintiff's pain and suffering, emotional distress, humiliation, anxiety, and loss of enjoyment of life;

e) Punitive damages based on Defendants' willful, malicious, and reckless disregard of Plaintiff's federally protected civil rights, under Title VII and 42 U.S.C. § 1981;

f) Attorneys' fees and costs pursuant to 43 P.S. § 962, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988;

g) Pre- and post-judgment interest on all monetary awards; and

h) Such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: New York, New York
September 27, 2026

Respectfully submitted,

THE COCHRAN FIRM

/s/TRACEY L. BROWN
TRACEY L. BROWN, ESQ.
Counsel for Plaintiff
17 State Street, 14th Floor
New York, New York 10004
(Tel No.) (212) 553-9165
(Facsimile) (212) 227-8763
tbrown@cochranfirmny.com